IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSIGLIA STACEY GROVE | ) |
| 2327 Deckman Lane | ) |
| Silver Spring, Maryland 20906 | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| LOOMIS SAYLES & COMPANY, L.P. | ) |
| One Financial Center | ) |
| Boston, MA 02111 | ) |
| | ) |
| Loomis. | ) |

**FIRST AMENDED COMPLAINT**
**FOR MONETARY DAMAGES AND JURY DEMAND**

**Preliminary Statement**

1.     This is a civil action against Defendant LOOMIS SAYLES & COMPANY, L.P.

("Loomis") for injuries that Plaintiff CONSIGLIA STACEY GROVE ("Grove") sustained as a

result of Loomis's unlawful discriminatory practices that violated the District of Columbia

Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.* as well as Loomis's breach of

its internal policies.

2.     Grove's claims arise from her employment as a Marketing Assistant at Loomis.  In

the spring of 2009, Loomis terminated the three oldest employees in its Institutional Services and

Marketing Department (the "Sales Department"), all of whom were over 60 years old, ostensibly

as part of an "economic layoff."  Grove, who was 34 years old at that time and worked for

Loomis for nearly 13 years, was the only other employee that was terminated along with the

three oldest employees.

1

3.      Each of the three elder employees was a Client Relations Manager in the Sales Department.  At the same time that Loomis laid them off, Loomis created a new position to manage Loomis's relationship with its clients that was offered to other, younger Loomis employees.

4.      In theory, the termination of the three eldest employees in the Sales Department meant that Loomis did not have enough work to fully employ Grove.  This is, however, demonstrably false because Loomis hired someone into the exact same position from which Grove was terminated almost immediately after her last day with Loomis.  Contrary to Loomis policy of giving current employees priority in securing any open positions, this position was not offered to Grove.

5.      Grove is therefore informed and believes that Loomis terminated its three oldest employees in the Sales Department in an attempt to have a younger professional workforce, and Grove was terminated with them in order to mask the illegality of the termination of the three eldest employees in the Sales Department.

6.      Grove has suffered from Loomis's discriminatory conduct and has been wrongfully terminated in violation of the District of Columbia's anti-discrimination laws.  Grove has also suffered as a result of Loomis's breach of contract by being terminated in violation of its internal hiring and employee retention policies.

## Jurisdiction and Venue

7.      This Court has jurisdiction over Grove's claims pursuant to 28 U.S.C. §1332(a)(1) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8.      Venue is proper in the District of Columbia under 28 U.S.C. §§1391(a)(2) and (b)(1) as the events or omissions giving rise to Grove's claims occurred in this district.

## Parties

9.      Grove is a citizen of Maryland who resides at 2327 Deckman Lane, Silver Spring, Maryland 20906.  At all times relevant to this Complaint, Grove has been employed by Loomis at its Washington D.C. offices located at 2001 Pennsylvania Avenue NW #200, Washington, DC 20006.  At all times relevant to this Complaint, Grove was an employee within the meaning of the DCHRA.

10.      Loomis is a Massachusetts-based company with its headquarters in Boston. Loomis employs approximately 500 employees and, at all times relevant to the Complaint, had a corporate office at Washington, D.C. located at 2001 Pennsylvania Avenue NW #200, Washington, DC  20006.  At all times relevant to the Complaint, Loomis was an employer within the meaning of the DCHRA.

## Factual Allegations

11.      Grove, who is now 36 years old, began her employment with Loomis in October 1996 and was a Marketing Assistant within the Sales Department from December 2000 until her termination on May 1, 2009.

12.      At the time of her termination, Grove provided administrative support to five individuals: Joseph B. Holmes ("Holmes"), Aileen Rappaport ("Rappaport"), Dan Ryzcek ("Ryzcek"), Laura Beckner ("Beckner") and Emily Hannum ("Hannum").

13.      Beckner and Hannum were Consultant Relations Managers for Loomis, and Holmes, Rappaport and Ryzcek were Client Relations Managers with Loomis.

14.     Holmes, Rappaport, Ryzcek, Don Moll ("Moll") and Gregory O'Hara ("O'Hara") were the only Client Relations Managers in Loomis's Sales Department at that time.

15.     Holmes, Rappaport and Moll were the oldest employees in the Sales Department.

16.     Holmes, Rappaport and Ryzcek worked out of Loomis's Washington D.C. offices along with Grove and two other Loomis employees.  Beckner and Hannum were based out of the DC offices of Loomis and worked from their home offices in North Carolina and Pennsylvania, respectively.

17.     Grove's direct supervisor, the Sales Department's Administrator, Heather Cote ("Cote"), was based out of Boston.

18.     Grove's duties and responsibilities included managing calendars, tracking expenses, coordinating travel, assisting the marketing officers in information retrieval, interfacing with prospective and existing clients, and being proactive in supporting her co-workers in their efforts to advance the business of Loomis.

19.     Grove's responsibilities were predominately accomplished electronically (by e-mail, voice mail, telephone, the Internet and other similar electronic means).  Therefore, the actual physical location where Grove performed her services was not material to the performance of her job.

20.     During the course of her employment with Loomis, Grove was regularly recognized for her consistency, reliability and efficiency.  She was also awarded regular raises and bonuses in recognition of her performance.  At no time during her tenure with Loomis was Grove ever disciplined, nor did she ever receive criticism indicating that her work performance was anything other than excellent.

21.     In 2001, John Gallagher ("Gallagher") assumed the position of the Director of Loomis's Sales Department.  Since then, Gallagher has engaged in the practice of hiring younger employees for non-administrative roles and has consistently demonstrated his age-based hostility against the older, non-administrative members of the Sales Department.

22.     For example, one of his major organizational decisions since becoming the Director of Loomis's Sales Department was removing the three oldest persons in his department from positions that focused on selling Loomis's financial products and placing these individuals in the "Client Services Team" (also known as the "Client Relations Team"), which was tasked on retaining existing clients rather than bringing new ones to Loomis.  The persons he placed on this team in 2005 were Rappaport who was then 59 years old, Holmes who was 66 at that time, and Moll who was then 76 years at that time.

23.     Along with removing the three eldest people in the Sales Department from selling Loomis products, Gallagher told Rappaport, "You're too old to do this job and you shouldn't be traveling," in response to a request from Rappaport to have more opportunities to develop contacts and make sales.  In so openly denying Rappaport business and work opportunities because of her age, Gallagher reveals his belief that older members of the Sales Department are not equipped to do the job of a salesperson.

24.     Despite the tumultuous economic market in 2008, Loomis weathered the storm very well to the extent that Loomis began acquiring entire investment teams from competitors in 2009 and even announced in February of that year that there would not be broad based layoffs at Loomis.

25.     On March 9, 2009, Grove was advised by Gallagher that she was being "laid off"

along with the three oldest employees in the Sales Department: Holmes, Rappaport and Moll. The alleged reason for the "layoff" was the supposed closure of Loomis's Washington D.C. offices.

26.     The only other Marketing Assistant in the Sales Department who worked remotely, Karen Calhoun, was not terminated at this time.   Ms. Calhoun was based in San Francisco and only supported two employees, whereas Grove had been supporting five employees.

27.     Despite Loomis's claim that Grove and the others were terminated as part of closing the Washington D.C. offices, Loomis never closed that office.   In fact, three of the six Loomis employees at the Washington D.C. offices when Grove was terminated are still based out of and work at that office.

28.     The employment relationship between Loomis and its employees was governed, *inter alia*, by the 2009 Loomis Sayles Staff Handbook (the "Handbook"), which was in effect at the time of Grove's termination.  A true and correct copy of the Handbook is attached hereto as Exhibit "A."

29.     The Handbook emphasized employee retention and stated in the section entitled "Circulation of Job Openings" that "Loomis Sayles believes in promoting from within and has established a policy of circulating job openings to give all employees an opportunity to apply for positions in which they are both interested and qualified, as determined by management's reasonable discretion. The firm encourages vacancies below the senior management level be circulated via a memo distributed to the company apprising employees of specific job openings. Memos on job openings generally include the title, the minimum hiring specifications, the

essential functions of the job and the closing date for filing applications. Employees normally have five workdays to respond to the memo."

30.     The Handbook's "Circulation of Job Openings" section further stipulated that "To be eligible to apply for an open position, you must have been in your current role for a minimum of one year. In addition, you must meet the minimum hiring specifications for the position, be capable of performing the essential functions of the job, with or without a reasonable accommodation, and be an employee in good standing."

31.     Loomis's decision to terminate Grove created a need for administrative support for the employees she previously supported but were not terminated, namely Beckner, Hannum and Holmes, who was retained in a consultant capacity after his layoff.  Loomis therefore sought to hire a person into what was effectively Grove's position immediately after deciding to terminate Grove, but before her actual termination date.

32.     The new Marketing Assistant position required the same qualifications as Grove's former position, had the same general job description, had the same primary duty of providing support services, and even provided these services to three of the individuals Grove formerly supported.

33.     The only significant difference between Grove's Marketing Assistant position and the new Marketing Assistant position was that the new position was located in Boston. However, as mentioned above, the geographic location of the person providing support services had little relevance to the job.  In fact, the new position, located in Boston, increased the geographic separation of the Marketing Assistant from the individuals that were supported by that employee because the individuals the new Marketing Assistant was supporting were located

7

in Pennsylvania, North Carolina and Washington D.C.

34.     Upon information and belief, the person who replaced Grove was offered the job before Grove's last day at Loomis on May 1, 2009.

35.     In contrast to its policies, including its obligations in under the "Circulation of Job Openings" section, Loomis did not circulate the new Marketing Assistant position or give Grove an opportunity to apply for this position, and Grove was therefore denied the five days to apply for this position as contemplated by Loomis's Handbook.

36.     Grove was eligible to apply for the new Marketing Assistant position and met all the requirements to fill the position under the "Circulation of Job Openings" section of the Handbook because Grove had worked for Loomis for over one year, met the minimum hiring specifications for the position, was capable of performing the essential functions of the job, was an employee in good standing, and was therefore inarguably eligible to apply.  However, Grove was denied this opportunity so she could be terminated along with Moll, Rappaport and Holmes, and thereby lower the average age of these terminations.

37.     Despite the fact that Grove was not offered the alternative Marketing Assistant position and was terminated against her desire, Loomis circulated a memorandum in our around May 2009 which described Moll's, Rappaport's and Holmes's terminations as "retirements" and falsely stated that Grove voluntarily "chose to depart the firm."

38.     Grove is informed and believes that Gallagher and Russell later told other Loomis employees that she and the elder employees were terminated as part of Gallagher's decision to "reorganize" the Sales Department and eliminate the Client Relations Manager position entirely.

39.     However, upon information and belief, new positions within the Sales Department

were recreated with substantially similar duties and responsibilities and with the same or similar job title concurrently with the terminations of Moll, Holmes and Rappaport.

40.     Further, upon information and belief, the persons hired into the new positions were significantly younger than the three Client Relations Managers who were recently terminated.

41.     Finally, the very day after Gallagher, Cote and Russell terminated Grove, Steve Doherty, a Loomis Vice President in the Sales Department that was based out of the Washington D.C. offices, told Grove that she had been laid off to "bring down the average age" of the termination of the elder Client Relations Managers.

42.     Based on the aforementioned facts, Grove alleges that the termination of Holmes, Rappaport, and Moll were primarily motivated by inappropriate and unlawful age bias against her older colleagues.  Grove further alleges that her employment was terminated because of her association with two of the three eldest non-administrative employees who were terminated and to cover up for the unlawful age-based terminations at Loomis.  Specifically, Grove alleges that she was added to the 2009 layoff in order to attempt to put a public face on the layoff as being balanced, non-discriminatory and not focused upon the older employees.

43.     Furthermore, Grove also alleges that by terminating her without giving her the opportunity to apply for the new Marketing Assistant position, Loomis has breached it obligation to Grove.

### COUNT ONE — DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE § 2-1402.11
**(Against Loomis)**

44.     Grove hereby incorporates as though restated each of the factual allegations set forth in paragraphs 1 through 43 above.

45.     At all times relevant to this Complaint, Loomis was an "employer" within the meaning of the DCHRA § 2-1401.02(10).

46.     At all times relevant to this Complaint, Grove was an "employee" within the meaning of the DCHRA § 2-1401.02(9).

47.     DCHRA §2-1402.11(a) identifies as an "unlawful discriminatory practice" acts that are conducted "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color… sex, [or] age… of any individual."

48.     DCHRA §2-1402.11(a)(1) identifies a specific set of acts by an employer that are "unlawful discriminatory practice" if conducted "wholly or partially for a discriminatory reason."

49.     The acts specified by DCHRA §2-1402.11(a)(1) include, amongst others, discharging any employee.

50.     Pursuant to DCHRA §2-1402.11(a) and DCHRA §2-1402.11(a)(1), it is an "unlawful discriminatory practice" for any employer to discharge any individual if the discharge is conducted "in whole or in part for a discriminatory reason" based upon the actual or perceived race, color, sex, and/or age of any other individual.

51.     In violation of the DCHRA and as described above, Loomis engaged in an unlawful discriminatory practice when they discharged Grove in an attempt to obscure their discriminatory reason for terminating Rappaport, Moll and Holmes.

52.     Loomis's actions described above directly and proximately have caused, and continue to cause, Grove to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal

embarrassment, and damage to her professional reputation.

53.     Loomis's actions described above substantially prejudiced Grove's legal rights, and were motivated by evil motive or actual malice, oppression or fraud.

## COUNT TWO — WRONGFUL TERMINATION IN VIOLATION OF THE PUBLIC POLICIES EMBODIED IN THE DCHRA
### (Against Loomis)

54.     Grove hereby incorporates as though restated each of the factual allegations set forth in paragraphs 1 through 43 above.

55.     Section § 2-1402.11 of the DCHRA prohibits employers from discriminating against employees on the basis of race, sex, or age, including taking adverse employment actions against employees on these bases.

56.     In terminating Grove because of association with employees in a protected class, Loomis acted in violation of well-established, identifiable policies codified in District of Columbia laws aimed at prohibiting discriminatory practices.

57.     Loomis's actions described above directly and proximately have caused, and continue to cause, Grove to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, and damage to her reputation.

58.     Loomis's actions described above substantially prejudiced Grove's legal rights, and were motivated by evil motive or actual malice, oppression or fraud.

## COUNT THREE — CONDUCT IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE § 2-1402.62
### (Against Loomis)

59.     Grove hereby incorporates as though restated each of the factual allegations set forth in paragraphs 1 through 43 above.

60.     Pursuant to the DCHRA D.C. Code § 2-1402.62, the "aiding and abetting" of

11

discriminatory practices is forbidden.

61.    Loomis was obliged to take all reasonable steps necessary to prevent discrimination against Grove.

62.    Loomis has failed to take all reasonable steps necessary to prevent discrimination against Grove and terminated her for discriminatory reasons as set forth above.

Loomis's actions described above directly and proximately have caused, and continue to cause, Grove to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, and damage to her reputation.

63.    Loomis's actions described above substantially prejudiced Grove's legal rights, and were motivated by evil motive or actual malice, oppression or fraud.

**COUNT FOUR — BREACH OF CONTRACT**
**(Against Loomis)**

64.    Grove hereby incorporates as though restated each of the factual allegations set forth in paragraphs 1 through 43 above.

65.    During the period of Grove's employment an express and implied-in-fact employment agreement existed between her and Loomis, which included but was not limited to the following terms as represented in the Handbook:

      a.      Loomis Sayles has a policy of circulating job openings below the senior management level to give all employees an opportunity to apply for positions in which they are both interested and qualified;

      b.      Loomis management will use reasonable discretion in determining which employees are interested and qualified for said positions;

      c.      Loomis will circulate job openings below the senior management level via

an internal memo;

d.      This memo will include at least the job title, the position's minimum hiring specifications, the essential functions of the job, and the closing date for filing applications.

e.      Employees will have five workdays to respond to the memo and apply for the position.

f.      Eligible employees are those that have been at their current position for at least one year, meet the minimum hiring specifications for the position, are capable of performing the essential functions of the job, and are an employee in good standing.

66.     As a result of the policies referenced above, Grove came to reasonably expect that she would receive an opportunity to apply for any non-senior management level position that was open prior before any layoffs or being terminated.

67.     Loomis breached the terms of the agreement with Grove by knowingly and willfully opening the new position in Boston and not providing Grove with an opportunity to apply for this position.

68.     Loomis denied Grove the opportunity to apply for the new position because she was eligible and qualified for the position, but Loomis specifically wanted to terminate her as along with terminating Rappaport, Holmes and Moll because terminating Grove would "bring down the average age" of the termination.

69.     As a direct and proximate cause of the unlawful conduct of Loomis against Grove, as set forth above, Grove has suffered special, actual, compensatory and/or nominal damages in amounts to be determined at trial.

**Request for Relief**

WHEREFORE, Grove prays this Court for the following relief:

1.      Enter a judgment in Grove's favor and against Loomis for discrimination on the basis of age in violation of the DCHRA;

2.      Enter a judgment in Grove's favor and against Loomis for wrongful termination in violation of the policies codified by the DCHRA;

3.      Enter  a judgment in Grove's favor and against Loomis for its failure to prevent discriminatory practices in violation of  the DCHRA;

4.      Enter  a judgment in Grove's favor and against Loomis for all damages arising from Loomis' breach of contract;

5.      An award to Grove of compensatory damages in an amount to be proven at trial;

6.      An award to Grove of general damages in an amount to be proven at trial;

7.      An award to Grove of punitive damages in an amount to be proven at trial;

7.       An award of reasonable attorneys' fees and costs; and

8.      All other relief the court deems just and proper.

Dated: March 4, 2011            Respectfully submitted,

                                *(-)Barton Moorstein*
                                Barton Moorstein (D.C. Bar # 317206)
                                BLANK & MOORSTEIN, L.L.P
                                600 Jefferson Plaza, Suite 202
                                Rockville, Maryland  20852
                                Phone: (301) 279-2200
                                Fax: (301) 279-7138
                                E-Mail:  BMoorstein@blankmoorstein.com

*//*
*//*

_(-) Yosef Peretz_
Yosef Peretz (Cal. Bar # 209288)
(*Pro Hac Vice*)
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, California 94111
Phone: (415) 732-3777
Fax: (415) 732-3791
Email: yperetz@peretzlaw.com

Attorneys for Plaintiff Consiglia Stacey Grove

## Jury Demand

Plaintiff hereby demands a trial by jury in this action.

Dated: March 4, 2011              Respectfully submitted,

*(-)Barton Moorstein*
Barton Moorstein (D.C. Bar # 317206)
BLANK & MOORSTEIN, L.L.P
600 Jefferson Plaza, Suite 202
Rockville, Maryland  20852
Phone: (301) 279-2200
Fax: (301) 279-7138
E-Mail:  BMoorstein@blankmoorstein.com

*(-) Yosef Peretz*
Yosef Peretz (Cal. Bar # 209288)
(*Pro Hac Vice*)
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, California 94111
Phone: (415) 732-3777
Fax: (415) 732-3791
Email: yperetz@peretzlaw.com

Attorneys for Plaintiff Consiglia Stacey Grove

**CERTIFICATE OF SERVICE**

I hereby certify that on ***March 4, 2011***, a copy of the foregoing of the First Amended Complaint in a Civil Action was served via email and mail to the following:

Robert B. Gordon
ROPES & GRAY, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
robert.gordon@ropesgray.com

*/s/ Sumy Kim*
Sumy Kim
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, CA 94111
415.732.3777

1

# EXHIBIT A

**LOOMIS · SAYLES & COMPANY, L.P.**

# Loomis Sayles
# STAFF HANDBOOK

For Internal Use Only          Copyright 2009 Loomis, Sayles & Company, L.P.
                               All Rights Reserved

## OUTLINE OF STAFF HANDBOOK

I.     **Introduction**................................................................4

II.    **Employment Policies**

    Affirmative Action.............................................................. 5
    Circulation of Job Openings............................................... 6
    Equal Employment Opportunity.......................................... 7
    End of Employment....................................................... 8
    Part-Time Employment.................................................... 8
    Sexual Harassment.......................................................... 9

III.   **Time-off Benefits**

    Bereavement Leave........................................................ 12
    FMLA....................................................................... 12
    Holidays and Personal Days............................................. 16
    Jury and Witness Duty Leave ........................................... 17
    Maternity Leave .......................................................... 17
    Military Leave ............................................................. 18
    Paternity Leave............................................................ 18
    Sick Days .................................................................. 18
    Vacation .................................................................... 19
    Wage Continuation (Short Term Leave)............................... 21

IV.   **Compensation and Additional Staff Benefits**

    Adoption Assistance Program............................................ 25
    Anniversary Gift Policy................................................... 26
    CFA Policy................................................................. 26
    Charitable Donations Policy............................................. 27
    COBRA .................................................................... 27
    Discretionary Bonus Programs.......................................... 28
    Flexible Benefits Plan.................................................... 28
    Health, Dental and Life Insurance Benefits........................... 28
    Long Term Disability Insurance......................................... 29
    New Employee Referral Bonus Program............................... 30
    Overtime Compensation.................................................. 30
    Payroll Procedure......................................................... 31
    Retirement Plans.......................................................... 31
    Transportation Expense Plan............................................ 31
    Tuition Assistance Program.............................................. 32
    Workers' Compensation.................................................. 33
    Employee Assistance Program........................................... 33

## V.   Staff Conduct

Absenteeism and Tardiness ...………………………………….…………… 34
Code of Ethics ………………………………………………….……… 34
Confidentiality of Information ……………………………………….……... 35
Computer and Telecommunications Use …………………………….……... 35
Personal Appearance and Demeanor ……………………………………… 36
Proprietary Information ……………………………………………….…… 36
References and Employment Information ……………………………….…… 37
Smoking Policy and Drug-free Workplace …………………………..……… 37
Travel and Entertainment Policy ……………………………………….…… 37

## VI.   Conclusion
……………………………………….....……………………   38

# I.   INTRODUCTION TO LOOMIS SAYLES STAFF HANDBOOK

Welcome to the Loomis Sayles Staff Handbook. This handbook exists to provide you with a working guide to understanding the day-to-day administration of personnel policies, pertinent employment law, employee benefits, and employment procedures. We hope you find it to be a useful resource. Visit the Table of Contents page to see a complete listing of the handbook contents. These policies can also be found on the Intranet site of the Human Resources department.

## SCOPE AND PURPOSE

This handbook is intended to act as a summary of the Company's policy and is provided for informational purposes only. If you want more detailed information on a policy or procedure please contact Human Resources. This handbook sets forth the general employment policies of the Firm. Since each employment situation is unique, the policies described herein must have some flexibility. As a result, the Firm may modify its policies where it determines, in its discretion, that the circumstances warrant it.

Since the employment laws may differ from state to state, some of the Company policies and benefits may differ from the handbook's summary description, depending on the state in which you work.

This handbook is not a contract, express or implied, guaranteeing employment for any specific duration. Although we hope that your employment relationship with us will be long term, your employment with Loomis Sayles is "at-will" and either Loomis Sayles or you may end the employment relationship if either of us wishes to do so. Please understand that no supervisor, manager, or representative of Loomis Sayles other than the Chief Executive Officer has the authority to enter into any agreement with you for employment for any specified period or to make any promises or commitments contrary to the foregoing. Any employment agreement entered into by the CEO shall not be enforceable unless it is in writing.

## CHANGES TO THE HANDBOOK

Personnel policies at the Firm will be revised from time to time to reflect any changes in federal laws, state laws, or policy changes at the Firm. Revisions will be available online or directly from Human Resources.

If you have any questions regarding any policies, please ask your supervisor or contact Human Resources for assistance.

## II.   EMPLOYMENT POLICIES

### AFFIRMATIVE ACTION POLICY

It is the policy of Loomis Sayles & Company, L.P. not to discriminate against any employee or applicant for employment because of race, creed, color, religion, gender, sexual orientation, national origin, age, veteran status, marital status, citizenship status or disability in accordance with applicable Federal laws. In addition, the Company complies with applicable state and local laws governing nondiscrimination in employment in every location in which the Firm has offices. Further, Loomis Sayles's policy is to take affirmative action to ensure that applicants are employed, and are treated during employment, without regard to those factors.

To that end, the Company will continue to recruit and hire without regard to ethnic or other irrelevant factors; to ensure that promotions are in accord with the principles of equal opportunity; and to ensure that all personnel actions such as compensation, benefits, transfers, training and discipline will be administered without regard to race, creed, color, religion, gender, sexual orientation, national origin, age, veteran status, marital status, citizenship status or disability in accordance with federal law and in compliance with applicable state and local law.

In addition, the Company will take the following affirmative actions to make a good faith effort to include a reasonable number of members of minority groups within its employ:

(1)     The Company will recruit and make efforts to obtain minorities through:

      (a)     Specifying that the Company is an equal opportunity employer in its advertisements for employment opportunities;

      (b)     Advising employment agencies and other sources of prospective employees that the Company is actively interested in interviewing qualified minority candidates;

      (c)     Encouraging present minority employees to refer other qualified minority applicants to the Company;

      (d)     Assuring that all employment specifications, selection requirements, tests, etc., are administered in a manner which does not discriminate against minority applicants; and

      (e)     Maintaining such files and reports as are required by federal or state law regarding the Company's recruitment and hiring processes.

(2)     The Company will utilize training programs and assist minority employees in locating, qualifying for, and engaging in such training programs to enhance their skills and advancement.

(3)     The Company will designate a person at the management level to be its Equal Employment Opportunity Officer; such individual to have the authority to disseminate and enforce the Company's Equal Employment and Affirmative Action Policies. The current EEO/AA Officer is John Russell.

(4)     The Company will maintain such records as are necessary to determine compliance with equal employment and affirmative action obligations, and make such records available to City, State and Federal authorities upon request.

Loomis Sayles has an affirmative action/equal employment opportunity committee that meets periodically to review the Company's affirmative action efforts and to determine its future goals.

## CIRCULATION OF JOB OPENINGS

Loomis Sayles believes in promoting employees from within and has established a policy of circulating job openings to give all employees an opportunity to apply for positions in which they are both interested and qualified, as determined in management's reasonable discretion. The firm encourages vacancies below the senior management level be circulated via a memo distributed to the company apprising employees of specific job openings. Memos on job openings generally include the title, the minimum hiring specifications, the essential functions of the job and the closing date for filing applications. Employees normally have five workdays to respond to the memo.

To be eligible to apply for an open position, you must have been in your current role for a minimum of one year. In addition, you must meet the minimum hiring specifications for the position, be capable of performing the essential functions of the job, with or without a reasonable accommodation, and be an employee in good standing.

Before applying for an internal position, you must notify your supervisor or Human Resources. This will allow you the opportunity to review your skills and experience against those required of the open position.

## EQUAL EMPLOYMENT OPPORTUNITY POLICY

Loomis Sayles is an equal opportunity employer and does not discriminate against employees or job applicants on the basis or race, creed, color, religion, gender, sexual orientation, national origin, age, veteran status, marital status, citizenship status or disability. Loomis Sayles is committed to a workplace free of discrimination of any type. The Company strongly disapproves of discrimination and will take appropriate corrective action to remedy any situation which is brought to our attention. Employment decisions shall be based on merit, qualifications and competence. Except where required by law, employment practices shall not be influenced or affected by virtue of an applicant's or employee's race, creed, color, religion, gender, national origin, sexual orientation, age, veteran status, marital status, citizenship status, disability or any other characteristic protected by law. This policy governs all terms and conditions of employment including, but not limited to, hiring, placement, promotion, termination, layoff, transfer, leaves of absence, compensation, and training. In addition, it is Loomis Sayles's policy to provide an environment that is free of unlawful harassment of any kind, including that which is sexual, racial, age-related or ethnic. In an effort to further its policy of equal employment opportunities the Company will:

1. Recruit, hire and promote for all job classifications without regard to race, creed, color, religion, gender, sexual orientation, national origin, age, veteran status, marital status, citizenship status or disability.  In addition, Loomis Sayles complies with applicable state and local laws governing nondiscrimination in employment in every location in which it has facilities.

2. Base its decisions on employment and promotions solely upon an individual's qualifications as related to the position for which he or she is being considered.

3. Insure that all other personnel decisions, such as compensation, benefits, transfers, layoffs, return from layoff, company sponsored training, education, social and recreational programs will be administered without regard to race, color, religion, gender, national origin, age, veteran status and/or disability.

An employee who feels that he or she is a victim of discrimination should immediately bring the matter to the attention of their supervisor or department head, or if either of these persons is inappropriate, to Loomis Sayles's EEO/AA Officer, John Russell, for appropriate investigation and action, where it is deemed warranted.

## END OF EMPLOYMENT

Employees desiring to end their employment relationship with Loomis Sayles are urged to notify their supervisor or department head at least two weeks prior to his/her intended last day of employment. Proper notice generally allows the Firm sufficient time to calculate all accrued overtime (if applicable) as well as other monies to which you may be entitled and to include such monies in your final paycheck. Without proper notice, you may have to wait until after the end of the next normal pay period to receive such payments. If an employee leaves Loomis Sayles prior to the end of the last pay period, the employee shall be obligated to return the money covering the portion of the pay period when the employee did not work.

As mentioned in the introduction in this handbook, all employment relationships with Loomis Sayles are on an at-will basis. Thus, although Loomis Sayles hopes that our relationships with employees are long term and mutually rewarding, either Loomis Sayles or you may terminate the employment relationship at any time.

Exit interviews are normally scheduled for outgoing employees after a supervisor receives notice of resignation or intent to retire and for employees whose termination is initiated by Loomis Sayles. The purposes of these interviews are to review eligibility for benefit continuation and conversion, answer questions about retirement benefits and the like, to ensure that all necessary forms are completed, to collect all Loomis Sayles property that may be in the employee's possession (e.g., Loomis Sayles credit cards, laptop computers building access cards, cell phones and keys), and to provide employees with an opportunity to discuss their job-related experiences. The exit interview is completed by the supervisor or Human Resources staff.

## PART-TIME EMPLOYMENT

There are two categories of part-time employees at Loomis Sayles: those who work less than 20 hours per week and those who work 20 hours per week or more but less than 40 hours per week. An employee who works less than 20 hours per week is a "limited part-time employee". An employee who works more than 20 hours but less than 40 per week is a "regular part-time employee".

The compensation that an individual working part-time receives will be commensurate with the duties and tasks performed.

A limited part-time employee is not entitled to participate in Loomis Sayles benefits programs including but not limited to benefits such as life insurance, healthcare coverage, retirement plans or vacation. If, for some reason, the part-time employee cannot work a scheduled day, he or she will either have to make up the time on an unscheduled day or not be paid for the day missed.

A regular part-time employee is entitled to participate in the Loomis Sayles benefits programs. However, vacation time will be earned on a percentage basis; i.e., hours regularly worked divided by 40 hours. The work schedule will be set by either the department head or office administrator. If, for some reason, the part-time employee cannot work a scheduled day, he/she will have to take vacation time, make up the time on another day or not be paid for the day missed. No part-time person will be required to work on a full holiday (one where the NYSE and the office are both officially closed).

The necessity for part-time positions will be determined by the department head. Loomis Sayles reserves the right to eliminate any part-time position or convert it to full-time based on the needs of the Company.

If a former full-time employee whose status has changed to part-time desires to return to full-time employment, he may do so dependent upon the availability of a full-time position and the approval of the department head.

## SEXUAL HARASSMENT POLICY

It is the policy of Loomis Sayles to maintain a workplace free from all forms of harassment, including sexual harassment, whether verbal or physical. Sexual harassment is prohibited by Loomis Sayles as well as by federal and state law. This policy applies to all employees at all levels of Loomis Sayles. Sexual harassment includes unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature by anyone, including supervisors, co-workers or visitors that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile or offensive working environment. An employee who engages in sexual harassment is subject to disciplinary action, up to and including termination of employment.

Unwelcome sexual advances, requests for sexual favors and other physical or verbal conduct based on sex constitutes sexual harassment when:

1 .  Submission to the conduct is an explicit or implicit term or condition of employment;

2.  Submission to or rejection of the conduct is used as the basis for an employment decision; or

3.  Such conduct is sufficiently severe or pervasive as to interfere with an employee's work performance or create an intimidating, hostile or offensive working environment.

Sexual harassment may include, but is not limited to, explicit sexual propositions, sexual innuendo, suggestive comments, sexually oriented kidding, teasing, jokes or practical jokes, foul or obscene language or gestures, display of foul or obscene materials and physical

contact of a sexual nature such as patting, pinching or intentional brushing against another's body.

Any employee who feels that he or she is a victim of sexual harassment should immediately bring the matter to the attention of their supervisor or the department head or, if either of these persons is inappropriate, to the Loomis Sayles' Director of Human Resources at Loomis Sayles & Company, L.P., One Financial Center, Boston, MA 02111, Telephone (617) 482-2450. Upon receipt of a complaint, Loomis Sayles will promptly conduct an investigation into the matter. That investigation may include (but may not be limited to) interviews with the employee who made the complaint, with the person(s) against whom the complaint was made and any other employees who may have knowledge of or witnessed the reported incident(s) or behavior. When the investigation is completed, Loomis Sayles will, to the extent appropriate, inform the person filing the complaint and the person alleged to have committed the conduct of the results of the investigation. Where the investigation confirms the offensive behavior, prompt corrective action will be taken. Determination of whether particular language or conduct is subject to disciplinary action under this policy is made on an individual basis in light of all the circumstances.  All information gathered will be treated as confidentially as practical. Employees should be aware, however, that information must be shared in order for an effective investigation to be conducted and, also, that any manager or supervisor who receives a complaint of sexual harassment from an employee or who otherwise knows or has reason to believe an employee is or has been subjected to sexual harassment is expected to report the incident promptly to their supervisor of their office or the Director of Human Resources for investigation.

Any discrimination, adverse action or retaliation, such as intimidation, threats or coercion, taken against an employee because he or she complains of sexual harassment or assists in an investigation is unlawful and will result in disciplinary action.

Below is listed the address of the federal agency and the appropriate enforcement agency in your state whom you may contact with regard to an investigation of sexual harassment.

Equal Employment Opportunity Commission (federal)
1801 L Street, N.W.
Washington, DC 20507
or 800-669-4000 for referral to Field Office

Office of Sexual Harassment Issues (NY)
55 West 125th Street
New York, NY 10027

Massachusetts Commission
Against Discrimination
One Ashburton Place, Room 615
Boston, MA 02108

Michigan Department of Civil Rights
201 N. Washington Square
Lansing, MI 48913

Illinois Department of Human Rights
100 West Randolph Street
Suite 10-100
Chicago, IL 60601

Washington, DC
Contact the Equal Employment
Opportunity Commission (listed above)

Wisconsin Department of Industry,
Labor and Human Relations
Equal Rights Division
819 North 6th Street
Milwaukee, WI 53203

California - Call 800-884-1684
Individuals referred to the closest office of
Dept. of Fair Employment and Housing

In California, the Department of Fair Employment and Housing ("DFEH") has the authority to conduct investigations into alleged harassment and other forms of discrimination. The deadline for filing complaints with the DFEH is one year from the date of the alleged unlawful conduct. If the DFEH believes that a complaint is valid and settlement efforts fail, the DFEH may seek an administrative hearing before the California Fair Employment and Housing Commission ("FEHC") or file a lawsuit in court. Both the FEHC and the courts have the authority to award monetary and nonmonetary relief in meritorious cases. Employees may contact the nearest DFEH office or the FEHC by checking the state government listings in the local telephone directory.

## III.   TIME OFF BENEFITS

### BEREAVEMENT LEAVE POLICY

In the unfortunate event that you are faced with the death of an immediate family member (see below), you will be given time off without loss in pay for a period of up to three days to be with your family. You should discuss your situation and requirements as soon as possible with your supervisor and determine how much time you will need - less than three days or possibly more. Time off with pay exceeding three days may be granted under special circumstances with the approval of the supervisor.

For the purposes of this policy an immediate family member includes spouse, domestic partner, parent, child, sibling, grandparent or grandchild.

The Company may, in its discretion and under special circumstances, approve bereavement leave for you for the death of a person whose is not an immediate family member.

### FAMILY AND MEDICAL LEAVE POLICY

Loomis Sayles will grant a leave of absence to full-time and regular part-time employees (who meet the requirements described below) for the care of a child after birth or adoption or placement with the employee for foster care, the care of a family member (spouse, child, or parent) with a serious health condition, or in the event of an employee's own serious health condition. Leaves will be granted for a period of up to twelve weeks in any twelve-month period or longer if required by applicable state or local law.

An employee must have completed at least one full year of service with Loomis Sayles and have worked a minimum of 1,250 hours in the twelve-month period preceding the leave to be eligible for such leave. While Loomis provides this benefit to all eligible employees, firms may limit the benefit to employees who work at a facility that employs at least fifty employees at that facility or within seventy-five miles of that facility. The leave may be paid, unpaid, or a combination of paid and unpaid, depending on the circumstances and as specified in this policy.

Employees with questions about what illnesses are covered under this FMLA policy or under Loomis Sayles's sick leave policy are encouraged to consult with staff in Human Resources.

Loomis Sayles will require an employee to provide a doctor's certification of the serious health condition. The certification process is outlined below.

### I.    Calculation of Benefit

An eligible employee can take up to 12 weeks of leave under this policy during any 12 month period. The Firm will measure the 12 month period as a rolling 12 month period measured backward from the date an employee uses any leave under this policy. Each time an employee takes leave, the Firm will compute the amount of leave the employee has taken under this policy and subtract it from the 12 weeks of available leave, and the balance remaining is the amount the employee is entitled to take at that time.[1]

If a husband and wife both work for Loomis Sayles, and each wishes to take leave for the birth of a child, adoption or placement of a child in foster care, or to care for a parent with a serious health condition, the husband and wife may only take a total of 12 weeks of leave.

### II.   Employee Status & Benefits During Leave

While an employee is on leave, Loomis Sayles will continue pay for the employee's health benefits during the leave period at the same level and under the same conditions as if the employee had continued to work.

If the employee chooses not to return to work for reasons other than a continued serious health condition, the Firm may require the employee to reimburse Loomis Sayles the amount it paid for the employee's health insurance premium during the leave period.[2]

Under current Loomis Sayles policy, the employee pays a portion of the health care premium. While on paid leave, Loomis Sayles will continue to make payroll deductions to collect the employee's share of the premiums. While on unpaid leave, the employee must continue to make this payment, either in person or by mail. The payment must be received by the Company by the 1st business day of each month. If the payment is more than 30 days late, the employee's health care coverage may be dropped for the duration of the leave. If the employee contributes to a life insurance or disability plan, Loomis Sayles will continue making payroll deductions while the employee is on leave. While the employee is on unpaid leave, the employee must continue to make those payments, along with the health care payments. If the employee does not continue these payments, the Firm may discontinue

---

[1] For example, if an employee used four weeks of FMLA leave beginning February 1st, four weeks beginning June 1st, and four weeks beginning December 1st, the employee would not be entitled to any additional leave until February 1st of the next year. On February 1st of the next year, the employee would be entitled to four weeks of leave.

[2] If the employee does not return at the end of the leave period, the employee's notification of his/her intent not to return will be the COBRA qualifying event. The employee should consult Loomis Sayles's COBRA policy.

---

coverage during the leave period, or will recover the payments at the end of the leave period, in a manner consistent with the law.

## III.   Employee Status After Leave

An employee who takes leave under this policy will be able to return to the same job or a job with equivalent status, pay, benefits and other employment terms. Exceptions to this provision may apply if business circumstances have changed (e.g., if the employee's position is no longer available due to a job elimination).

Loomis Sayles may choose to exempt certain highly compensated or key employees from this requirement and not return them to the same or similar position.

Employees who fail to: (1) notify the Company of their desire or intent to take FMLA leave; (2) to certify or recertify the need for the leave; (3) to update the Company periodically (once a month is suggested) of their status while on leave; or (4) to return to work when the leave has expired will forfeit their right to return to their own or an equivalent position.

Except as provided under the return to work section, this policy does not alter any employee's at-will employment relationship with the Company.

## IV.   Use of Paid and Unpaid Leave

If the employee has accrued paid leave, the employee should use paid leave first and take the remainder of the 12 weeks as unpaid leave. An employee who is taking leave as allowed under this policy should use all paid vacation, personal or sick leave prior to being eligible for unpaid leave unless his supervisor and Human Resources agree to allow the employee to take unpaid leave prior to using all paid leave time.

Pregnancy, disability or other leave for the care of a child after birth or adoption or placement with the employee for foster care or for an employee's serious health condition taken under Loomis Sayles's Wage Continuation Policy is considered paid sick leave for purposes of FMLA substitution. The Wage Continuation benefits run concurrent with the FMLA leave.

## V.   Intermittent Leave or a Reduced Work Schedule

The employee may take FMLA leave in 12 consecutive weeks, or under certain circumstances may use the leave intermittently (take a day periodically when needed over the year), or to reduce the workweek or workday, resulting in a reduced hour schedule. In all cases, the leave may not exceed a total of 12 weeks over a 12 month period.

Loomis Sayles may temporarily transfer an employee to an available alternative position with equivalent pay and benefits if the alternative position would better accommodate the intermittent or reduced schedule.

For the birth, adoption or foster care of a child, the Firm and the employee must mutually agree to the schedule before the employee may take the leave intermittently or work a reduced hour schedule. Leave for birth, adoption, or foster care of a child must be taken within one year of the birth or placement of the child.

If the employee is taking leave for his or her own serious health condition or because of the serious health condition of a family member, the employee should try to reach agreement with the Firm before taking intermittent leave or working a reduced hour schedule. If this is not possible, then the employee must prove that the use of the intermittent leave or reduced hour schedule is medically necessary. The Firm may require certification of the medical necessity (discussed below).

## VI.   Certification of the Serious Health Condition

Loomis Sayles may ask for certification of the serious health condition. The employee should try to respond to such a request within 15 days of the request, or provide a reasonable explanation for the delay. Failure to provide certification may result in a denial of continuation of leave. Medical certification may be provided by using the Medical Certification Form which can be obtained from Human Resources.

If the employee plans to take intermittent leave or work a reduced schedule, the certification must also include dates and the duration of treatment and a statement of medical necessity for taking intermittent leave or working a reduced schedule.

Loomis Sayles has the right to ask for a second opinion when it reasonably deems it necessary. The Firm will pay for the employee to get a certification from a second doctor, which the Company will select.

If necessary to resolve a conflict between the original certification and the second opinion, the Firm will require the opinion of a third doctor. The Firm and the employee will jointly select the third doctor, and Loomis Sayles will pay for the opinion. This third opinion will be considered final.

## VII.  Procedure for Requesting Leave

Except where leave is not foreseeable, all employees requesting leave under this policy must submit the request in writing to their immediate supervisor, with a copy to Human Resources.

When an employee plans to take leave under this policy, the employee must give the Firm 30 days' notice. If it is not possible to give 30 days' notice, the employee must give as much notice as is practicable. An employee undergoing planned medical treatment is required to make a reasonable effort to schedule the treatment to minimize disruptions to the Firm's operations.

If an employee fails to provide 30 days' notice for foreseeable leave with no reasonable excuse for the delay, the leave request may be denied at least 30 days from the date the Firm receives notice.

While on leave, employees are requested to report periodically to the Firm regarding the status of the medical condition, and their intent to return to work. Loomis Sayles may require the employee to provide medical certification of the continuing need for the leave every 30 days.

## HOLIDAYS AND PERSONAL DAYS

Loomis Sayles usually provides paid time off to all full-time and regular part-time employees on the following holidays:

- New Year's Day
- Martin Luther King's Birthday
- Presidents Day
- Good Friday
- Memorial Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Christmas Day

Holidays falling on a Saturday are normally observed on the preceding Friday. Holidays falling on a Sunday are normally observed on the following Monday. You are notified prior to the beginning of each calendar year of the actual dates on which each of these holidays is observed.

In addition to the holidays listed above, employees are entitled to three "Personal Days" which may be taken any time with sufficient advance notice and supervisor's approval. Personal Days are in addition to accrued vacation time. They cannot be carried

over at the end of the year; they must be taken or forfeited. They will not be included in any accrued vacation payments for terminating employees.

## JURY DUTY LEAVE

As a good corporate citizen, Loomis Sayles wants to do its part to support the justice system in the United States. If you are a full-time or regular part-time employee and are summoned to serve on a jury, you will be granted a leave of absence from Loomis Sayles to perform the service. The Firm will continue to pay your wages for the active period of the jury duty less the amount of pay you receive as a juror. If you are not a full-time or regular part-time employee, you will be given time off without pay while serving jury duty. Voluntary service will not be compensated unless advance permission is granted by the appropriate department head.

The Firm must be notified of your request as soon as you receive notice to serve. To qualify for jury duty leave, you must submit to your supervisor a copy of the summons to serve as soon as it is received. In addition, proof of service may be required when your period of jury duty is completed. The time allowed for jury duty shall be only as long as necessary to carry out the service. You are expected to report to work when not on duty.

The Firm will continue to pay the employer's portion of the health insurance premiums and other benefit costs for an employee who is taking an approved jury duty leave of absence. Vacation benefits shall continue to accrue while on leave.

Loomis Sayles will make no attempt to have your service on a jury postponed except when business transactions necessitate such action.

## MATERNITY LEAVE

Loomis Sayles provides twelve weeks leave after delivery of a newborn or the adoption of a child. If the employee has not exhausted all paid benefits under the Wage Continuation policy, then the employee shall be provided with a paid leave consistent with the terms of the Wage Continuation policy. If the employee has exhausted all paid benefits under the Wage Continuation Policy, then the employee will still be eligible for the eight week maternity leave and will receive the same amount of paid leave as is provided under our Paternity Leave policy. Any time available to an employee under the Family and Medical Leave policy will run concurrent with the maternity leave. If an employee needs to take a medical leave prior to delivery, then she will be provided coverage under our Wage Continuation policy. After the maternity leave, the employee may return to her job or a substantially similar job.

## MILITARY LEAVE

Leaves of absence without pay for military or Reserve duty are granted to full-time and regular part-time employees. If you are called to active military duty or to Reserve or National Guard training, or if you volunteer for the same, you should submit copies of your military orders to your supervisor as soon as is practicable. Such notification to the Firm must include written verification of duty call from a military authority, date the leave is to commence, and the expected date of return. You will be granted a military leave of absence without pay for the period of military service, in accordance with applicable federal and state laws. If you are a reservist or a member of the National Guard, you are granted time off with pay for required military training up to a maximum of two weeks per year.

A military duty leave of absence is an unpaid leave. However, an employee may use any available paid vacation as compensation during the leave. During a leave of absence, an employee will not accrue vacation time or continue to vest in the Firm's Wage Continuation program and will not be eligible for holiday pay. However, the Firm will continue to pay the employer's portion of the health insurance premium for the length of the leave.

Your eligibility for reinstatement after your military duty or training is completed is determined in accordance with applicable federal and state laws.

## PATERNITY LEAVE

To give parents an opportunity to adjust to the demands of new family members, the Company will grant paid leave to fathers during the three-month period before or after birth or adoption. Employees are eligible for Paternity Leave if they have completed 12 months of continuous service at the time the leave is to commence.

Paid Paternity Leave comprises a total of ten consecutive working days. Employees who work less than full-time are entitled to Paid Paternity leave at a rate proportional to their fraction of full-time employment.

Management must approve all leaves. Employees may extend leaves by using paid vacation; they may also, with approval, extend leaves with unpaid leave.

## SICK DAYS

Loomis Sayles recognizes that employees may require time off to secure necessary medical treatment for themselves or their immediate family members. In the event of an employee's illness or injury or in order for an employee to care for an immediate family member, we provide paid sick days to full-time and regular part-time employees.

Longer term absences of over two weeks duration for the same personal illness or injury are covered under our Wage Continuation Policy. In addition, where applicable, an employee may also be eligible for leave under the Family and Medical Leave Act. An

employee's illness or injury may also be covered under applicable worker's compensation insurance or, where applicable, statutory short-term disability. An employee's sick leave will not be paid under this policy if it is covered elsewhere under the options listed above.

If you are unable to work because of illness, you must notify your supervisor or department head before the start of business on each day of your absence. If you are granted an authorized medical leave, different notification procedures apply. (See the Family and Medical Leave and the Wage Continuation policies described in this handbook. Failure to properly notify Loomis Sayles results in an unexcused absence.

Loomis Sayles may, in its discretion, require a note from a physician for absences of more than three days or repeated absences of shorter duration to approve any time away from work due to illness or injury or to care for an immediate family member. The records on the number of sick days used by and available to employees are kept in the personnel files of the applicable department or office.

This policy does not grant employees an unrestricted right to paid sick days. The firm may limit the amount of sick time it will pay for an employee or employees in its reasonable discretion. Absenteeism that is unexcused or excessive in the judgment of Loomis Sayles (for example, where an employee's record indicates a pattern of short absences or frequent absences before or after holidays and weekends) may result in disciplinary action, up to and including dismissal. This policy is subject to change and is not intended to provide any contractual rights or obligations between employer and employee.

## VACATION

Because we recognize the importance of vacation time in providing the opportunity for rest, recreation, and personal activities, Loomis Sayles grants, paid vacations to its full time and regular part-time employees. The amount of vacation to which you are eligible is based on time worked and completed years of service with the Firm.

An employee starts earning vacation in the month of hire. A full month's credit is awarded for the first month worked regardless of the specific date of hire within the month. If an employee terminates, the employee's final paycheck will include payment for vacation earned and unused. In the event of termination, no vacation time will be credited for the month in which the last day is worked. (This is equitable since a full month's credit was awarded in the month of hire.)

Earned Vacation. The following schedule lists the amount of vacation an employee earns annually and the dates when the vacation allotment increases subject to the restrictions such as your accrual maximum described herein:

| Completed Years of Service | Vacation Days Earned Each Month | Vacation Earned Each Year | |
|---|---|---|---|
| | | Days | Weeks |
| 0 up to 2 years | .83 | 10 | 2 |
| 2 years up to 6 years | 1.25 | 15 | 3 |
| 6 years up to 20 years | 1.67 | 20 | 4 |
| 20 years Plus | 2.08 | 25 | 5 |

Exceptions to the above earned vacation and years of service guidelines must be approved by the appropriate department head.

Part-Time Employees. Regular part-time employees accrue vacation on these same schedules but are paid only for the number of hours they would normally be scheduled to work during the vacation period. For example, a new regular part-time employee who is regularly scheduled to work twenty hours per week is entitled to ten days or two weeks vacation time, and, based on the employee's regular schedule of twenty hours per week, is paid for twenty hours for each week of vacation.

Anniversary Date. While the amount of vacation you earn is expressed on an annual basis (i.e. three weeks of vacation per year), vacation time is accrued on a monthly, not annual basis. For example, if you receive three weeks of vacation a year, you are not credited with three weeks on January 1st, but earn 1.25 vacation days each month. As you reach a milestone date (i.e. 2 years, 6 years or 20 years of service), you will begin to accrue at the new, higher monthly rate starting on that milestone date.

Accrual Maximum. Vacation may be taken as time accrues at any point during the year. You may also carry accrued vacation from year to year. However, there is a limit on how much vacation time you can accrue and carry. Specifically, you are not eligible to earn any additional vacation once you have reached your annual vacation accrual limit. For example, if you are eligible for ten days of vacation a year and only use seven days during the year you will carry three days from the previous calendar year. You would continue earning the current year's vacation until you reach your annual accrual amount of ten days. At that point you would stop accruing vacation until you took some vacation days and reduced your accrual amount below your annual limit. You would then start earning vacation time again unless and until you reached your annual allotment again. By this limitation, the firm is strongly encouraging its employees to use all vacation time in the year it is earned.

For purposes of example, we used a calendar year to describe the accrual maximum. However, it is important to note that you will stop accruing vacation when you reach your annual allotment, regardless of what point in the year that occurs.

<u>Scheduling Vacation</u>. An employee must gain the approval of his or her manager in scheduling vacation time. Scheduling should be done well in advance. Vacations may be taken as a weekly period or as individual days as long as the periods chosen meet departmental approval.

<u>Records</u>. Each office/department must maintain vacation records for each employee. It will be reported on each pay stub. Employees must report their vacation usage to the designated office/department administrator in a timely fashion.

No payments will be made in lieu of taking vacation, except for accrued unused vacation at the time of termination. In the event that a holiday observed by Loomis Sayles falls within a scheduled vacation period, that holiday will not be counted as a vacation day.

Any questions regarding vacation should be directed to your office administrator.

## WAGE CONTINUATION (SHORT TERM LEAVE)

### I.   General Policy

The Loomis Sayles Wage Continuation Program represents the general policy of the Firm regarding payment of salary to employees during periods of absence due to accident, illness, or pregnancy of the employee. This policy is subject to change and is not intended as a commitment to pay a specified amount of wages to any employee for a specified period of time.

### II.   Long Term Absences Due To Illness, Injury or Pregnancy

Loomis Sayles has established this Wage Continuation Policy to supplement the Firm's paid sick day policy, statutory short-term disability program (where applicable), worker's compensation and related state or federal benefits programs. This benefit is available to full-time employees and regular part-time employees. Compensation arrangements for any eligible employee who is absent for a continuous period of two weeks or more due to an accident, illness, or pregnancy will be governed by this policy.

### A.   Beginning Date of Wage Continuation

Typically the Wage Continuation period will begin on the first day of any two week (or longer) absence due to an accident, illness, or pregnancy. If an absence is not expected to be of two week duration, the employee should use his or her sick days. If the absence extends into two weeks, Wage Continuation coverage will be retroactive to the original date of the employee's absence. In order to qualify for wage continuation, the employee should be completely absent from work. However, in the discretion of Loomis Sayles, reduction of schedule may qualify as an absence triggering coverage under the wage continuation policy. Any grant of wage continuation requires medical substantiation.

1.  If any employee is absent for less than two weeks, returns to the office and is then absent again as a result of the original condition, the entire period of absence (if it exceeds two weeks) will be considered a single continuous period of absence.

2.  In the case of pregnancy leave for medical reasons which lasts for two weeks or more, wage continuation will begin on the day the employee began her absence from work. In the case of pregnancy without leave prior to delivery, wage continuation will begin on the day following the last full day at work prior to childbirth. (See separate Maternity Leave policy).

## B.   Wage Continuation Allowance

It is our policy to continue to pay an employee's base salary (or percentage of base salary), less applicable deductions, to any employee who is absent due to a serious medical illness or condition for a period not to exceed six months. The period during which wages are paid will not depend on length of service--the six month maximum will apply to all eligible employees. However, length of service will affect the amount the employee receives after the first four weeks of absence. These payments will be made on the following schedule:

|  | Percentage of Salary During Period of Absence | |
| --- | --- | --- |
| Length of Service (All @ 1000 hrs.) | First 4 Weeks | Next 22 Weeks |
| Less than 3 Years | 100% | 60% |
| 3-6 Years | 100% | 80% |
| Over 6 Years | 100% | 100% |

If the employee is eligible for benefits from Workers' Compensation, State Disability Social Security Disability or any other applicable state or federal law or program, Wage Continuation payments will be adjusted for such benefits.

An eligible employee can receive up to six months Wage Continuation coverage under this policy during any 12 month period. The Firm will measure the 12 month period as a rolling 12 month period measured backward from the date an employee receives benefits under this policy. Each time an employee takes leave and receives wage continuation benefits, the Firm will compute the amount of leave the employee has taken under this policy and subtract it from the amount of available leave, and the balance remaining is the amount the employee is entitled to take at that time.

## C.   Reporting Procedures

As soon as a Wage Continuation situation is anticipated or encountered, the employee must notify his/her Supervisor, department head, or office administrator, who should in turn notify Human Resources, in writing, of the following:

1.   The reason for the absence.

2.   The last day that the employee worked or the last day the employee plans to work in the case of pregnancy or elective surgery.

3.   The estimated duration of the absence.

4.   Prior periods of absence, both short and long, which may be included in the Wage Continuation period as one continuous absence if they stem from the same original condition.

5.   Employee's eligibility for Workers' Compensation, State Disability, or Social Security Disability or related benefit payments.

Since the amount of the Wage Continuation payments is affected by length of service and by governmental disability payments, employees cannot be given a definite indication of the amount of their Wage Continuation payments until the situation has been reviewed by staff in Human Resources.

## D.   Medical Substantiation

Any absence covered under the Wage Continuation Policy requires medical substantiation. In such cases the employee's doctor should be asked to complete the Firm's medical form specifying the nature of the illness and the approximate date of return to work. When the duration of any absence is not known in advance, the employee's doctor should be asked to complete a medical form whenever an absence reaches two weeks. This form is available from Human Resources on its Intranet site. To be eligible for continued benefits the employee may be required to provide additional physician's statements once every thirty days, or more frequently if requested, attesting to his or her continued disability or inability to work.

### III.    Special Considerations

#### A.    Pregnancy

Consistent with applicable law the Firm treats pregnancy related medical conditions the same as any other temporary disability. As with any request for coverage under the Wage Continuation Policy, pregnancy-related absences require medical substantiation. If an employee who is pregnant requires medical leave, the employee should contact Human Resources or use the Human Resources Intranet site to obtain the necessary doctor's form. The employee must have his or her health care provider complete the form and return it to Human Resources before any payments can begin. Consistent with all other coverage under the this policy, Loomis Sayles will pay up to a maximum of six months for pregnancy related absences on the schedule and in the amounts described previously. Thus, if an employee leaves work during a pregnancy and is absent from work for a total of six months before delivery, payments under the Wage Continuation Policy shall end prior to delivery when the employee has reached the six month maximum. The employee, however, would still have the option of taking an unpaid maternity leave after delivery for eight weeks consistent with our maternity leave policy.  The firm's maternity leave policy is described earlier in this handbook.

In the absence of postnatal problems, wage continuation payments end eight weeks after birth, unless the 6 month maximum has already been reached.

#### B.    Workers' Compensation

If any employee sustains an injury at work, it is important that the injury be reported immediately to the supervisor or department head, to Human Resources, and to the State Workers' Compensation Board. If any wage continuation payments made as the result of such injury must be coordinated with Workers' Compensation benefits.

#### C.    Long Term Disability

Partial replacement of income for prolonged disability may be covered by long term disability insurance. See the description of long term disability insurance later in this handbook.

#### D.    Family and Medical Leave Act

Any leave or absence taken by an employee under the Wage Continuation Policy the employee's serious health condition will be construed as a leave under the Family and Medical Leave Act for eligible employees. As a result for the purposes of calculating an employee's use of FMLA time, a leave under the Wage Continuation Policy runs concurrent with FMLA (See our FMLA policy for more details on that benefit).

### E.   Reinstatement to Position

Consistent with our FMLA policy, eligible employees seeking to return to work any time prior to the completion of the twelfth week of leave will be reinstated to their former position or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Exceptions to this provision may apply if business circumstances have changed (e.g., if the employee's position is no longer available due to a job elimination), or Loomis Sayles may choose to exempt certain highly compensated or key employees from this requirement and not return them to the same or similar position. After the completion of the twelfth week of leave the Firm, in its reasonable discretion, may fill the position of the employee who remains away from work.  If the employee's position is filled, the Firm will attempt to find another position for the employee wishing to return to work. If the Wage Continuation Period expires and the employee has not returned to work then the employee's employment with Loomis Sayles will be terminated.

## IV.   COMPENSATION AND ADDITIONAL BENEFITS

### ADOPTION ASSISTANCE

The Firm provides eligible employees with reimbursement up to a maximum of $11,650 per adoption with a maximum of two adoptions per family. Individuals to be considered eligible for adoption assistance must be under the age of eighteen (18) and may not be a relative or stepchild. An employee will be eligible for the benefit if he or she: (1) has completed a minimum of one year of service with the Firm; and (2) works a minimum of 20 hours per week.

This benefit covers the following expenses:

- Licensed adoption agency fees (including fees for placement and parental counseling).
- Legal fees and costs of legal proceedings.
- The birth mother's and baby's unreimbursed medical expenses (if adopting an infant).
- The child's initial medical examination (if not covered by the Firm's health plan).
- Temporary foster care immediately preceding the adoption.
- Psychological evaluations of the child to be adopted.
- Post-adoption psychological counseling for the adopted child.
- Pre and post-adoption psychological counseling for adoptive parents and/or family counseling.
- Travel expenses, immunizations and translation services for a foreign or non-English speaking adoptive child.

If you are planning to adopt please contact Human Resources to review the policy before incurring reimbursable expenses. After the adoption process is completed you should send to Human Resources a memo with your paid receipts and proof that the adoption is final. Reimbursement is normally made with the next monthly payroll.

## EMPLOYEE ANNIVERSARY GIFT POLICY

Loomis Sayles values its employees, especially those who have shown a long-term commitment to the Firm. As a result, Loomis Sayles provides employees who reach milestone anniversary dates with a gift in recognition of their dedication and loyalty to the Firm. The amount of the gift, minus required deductions, is as follows:

| Years of Service | Amount of Gift |
|---|---|
| 15th | $ 3,750 |
| 20th | $ 7,500 |
| 25th | $11,250 |
| 30th | $15,000 |
| 35th | $18,750 |
| 40th | $22,500 |
| 45th | $26,250 |
| 50th | $30,000 |

The amount of the gift will be paid on a pro-rated basis for regular part-time employees. The above policy is subject to periodic management review and change.

## CHARTERED FINANCIAL ANALYST (CFA) POLICY

Analysts and portfolio managers are hired with the understanding they will pursue the CFA certification. Other employees are also encouraged to pursue this program provided they have the requisite training and educational background. Employees must first seek guidance and approval from their department head before undertaking this program.

When approved in advance, the Firm will reimburse a Loomis employee up to $2,800 for the initial registration and exam. Employees sitting for subsequent exams will be reimbursed up to $2,250 per exam. The Firm may adjust the amount of reimbursement from time to time. Reimbursement forms for the CFA exam may be obtained from Human Resources. In order to qualify for reimbursement, a person needs to be an employee in good standing with Loomis Sayles when taking the exam.

## CHARITABLE DONATIONS PROCEDURE

The charitable contribution committee of Loomis Sayles provides financial support to various charities, projects and/or pledge-a-thons which are not client-related. Loomis Sayles supports employees who make financial commitments of their own to charitable organizations through the employee matching gift program.

The terms and limits of the employee matching gift program can be found on the Corporate Communications page on the Firm's Intranet. The maximum amount of matching contributions the Firm will make is $500 per employee per year.

The Firm has the right to approve or reject a request for a matching gift in its discretion. Please note that both public and private educational institutions (all levels: elementary, secondary, college, and university) as well as political organizations are excluded and will not qualify for corporate matching gifts.

## COBRA COVERAGE

If you are an employee of Loomis Sayles, and you receive comprehensive health coverage through the Firm, you have the right to continue this coverage for up to 18 months if you lose your group health coverage because of a reduction in your hours of employment or the termination of your employment (for reasons other than gross misconduct on your part.)

The spouse or dependent child of an employee who had family coverage under the health plan has the right to choose COBRA continuation coverage for up to 36 months if group health coverage under the plan is lost for certain "qualifying events" defined by law.

If you do not choose continuation coverage, your group health coverage will end.

Our plan administrator will contact you concerning these options at the time termination occurs or your work hours are reduced. The plan administrator will contact your qualified beneficiaries in the event of your death or enrollment for Medicare benefits. However, in the event that you become divorced or legally separated, or one of your dependents ceases to be eligible for coverage under our group health insurance plans, you and/or your dependent are responsible for contacting Human Resources to discuss continuation/conversion rights. You and your qualified beneficiaries are also responsible for notifying Human Resources within sixty days of qualifying for social security disability benefits.

When Loomis Sayles is notified that one of these qualifying events has occurred, the plan administrator will in turn notify you that you have the right to choose COBRA continuation coverage. You have 60 days from the later of the date your coverage would be lost because of one of the qualifying events described above or the date the plan representative sends you notice of your right to continuation coverage.

For further details on COBRA continuation of coverage and the necessary procedure for electing it, contact Human Resources.

## DISCRETIONARY BONUS PROGRAMS

Compensation is generally divided into two groups: (1) a fixed salary or hourly rate; and (2) variable compensation principally in the form of bonus payments or sales commissions. The latter payments are dependent on the Firm's profitability and/or individual performance. These bonus programs are offered at the sole discretion of Loomis Sayles and may be subject to change or termination at the Firm's discretion. No employee shall be eligible for any of the bonus programs if he or she is not employed by Loomis Sayles at the time of the distribution of the bonus payments or sales commissions.

## FLEXIBLE BENEFITS PLAN

The Loomis Sayles's Flexible Benefits Plan will enable you to pay for qualifying employment-related dependent care expenses and/or unreimbursed health care expenses with pre-tax gross income instead of after-tax net income. If you wish to participate in the Plan then you must fill out a Flexible Spending Account Enrollment Form during annual open enrollment or thirty days from a qualifying event and indicate the amount of money to be deducted each pay period for anticipated dependent care expense and/or unreimbursed medical expenses. Because the amount of money paid for these services under the Plan is deducted before you receive your paycheck, neither federal or state income tax nor Social Security (FICA) will be withheld from this amount. The actual amount you save in taxes will depend on your annual family income. Any amount of Flexible Benefits monies not used in the calendar year will be forfeited.

## HEALTH, DENTAL AND LIFE INSURANCE BENEFITS

Loomis Sayles has attractive benefits programs including health, dental and term life insurance. A summary plan description ("SPD") for each of these benefits is provided to new employees upon hire and is available on the Human Resources page of the Firm's Intranet site. Additional copies of the SPDs may be obtained from Human Resources.

### 1. Medical

Loomis Sayles provides health insurance coverage for its employees. The Firm pays a portion of the premium and the employee pays a portion with pre-tax dollars. Employees have a choice annually during open enrollment or thirty days from a qualifying event to continue or enroll as a member of the health plan (including changing health plans, if the Firm offers health plan options).

## II. Dental

To encourage routine care, the dental plan covers most preventive care services, such as exams and cleanings, at 100% with no deductible. Other types of dental services are covered, but at a lesser rate. The plan also covers a portion of orthodontic expenses.

## III. Life Insurance

Employees are provided with company-paid core life insurance equal to two times one's annual base salary. Staff may purchase additional supplemental life insurance. Employees may purchase life insurance for a spouse and/or dependent children as well.

For more information about your coverage options please check the Human Resources section of our Intranet site.

Employees automatically receive accidental death and dismemberment insurance, as well as travel accident insurance if they travel on company business.

# LONG-TERM DISABILITY

Loomis Sayles provides all eligible employees the opportunity to purchase long-term disability insurance benefits. Coverage for eligible employees is effective on the first day of acceptance of the application for coverage.

Under this program, employees who are disabled for more than 180 days because of injury or sickness (in accordance with the definition of "disability" specified in our summary plan description booklet on long-term disability benefits and in the master insurance contract) are eligible to receive benefits as described in the long-term disability policy. Benefits continue for as long as your qualifying disability continues in accordance with the maximum benefits periods specified in the summary plan description booklet and in the master insurance contract.

The cost to provide long-term disability benefits is currently paid 25% by the Firm and the remaining 75% by the employee. The cost is deducted from the employee's paycheck on a monthly basis.

Coverage under the long-term disability program is completely voluntary. In order to receive long-term disability coverage, an employee must choose to participate by contacting their supervisor. Coverage under this plan normally terminates on the date your employment with Loomis Sayles terminates. If, however, you are receiving long-term disability benefits at the time of your termination, these benefits continue for as long as your qualifying disability continues, as previously noted.

For further details regarding long-term disability coverage, consult the summary plan description on long-term disability or contact Human Resources.

## NEW EMPLOYEE REFERRAL BONUS

From time to time positions become available which cannot be filled by existing personnel within the Firm. Frequently, the Firm retains the services of employment agencies to assist in hiring qualified candidates for these openings. However, in many instances this can be a costly and time-consuming approach. Sometimes the best candidates for job openings at Loomis Sayles come directly from our employees' immediate circle of friends, acquaintances and business contacts.

In order to promote greater participation in identifying qualified candidates, the Firm will award a $4,000 referral bonus, minus taxes, to employees who recommend candidates for an open full-time position. In order to receive the referral award the candidate must: (1) be hired by the Firm for that open position; and (2) successfully complete three continuous months of employment. Employees who are department heads and/or involved in the hiring process are not eligible for the referral bonus. The bonus for referring a regular, part-time employee will be prorated based on the hours per week the employee works.

Hiring managers or office administrators should first notify existing personnel of job openings and solicit employee interest. A memo distributed to the Firm apprising staff of job openings and related qualifications will accomplish this objective. If no qualified candidates are identified from within the Firm, then recommendations of non-Loomis Sayles people will be considered. Employment agencies should be used only after first considering internal candidates and recommendations from Loomis Sayles staff.

## OVERTIME COMPENSATION

The Firm compensates its full time non-exempt employees on the basis of a 40 hour work week even though, in most instances, it requires the employees to actually work a minimum of 35 hours. In infrequent situations where an employee is asked to work beyond 35 hours during a work week, no additional compensation will be paid for time worked beyond 35 hours, up to and including 40 hours. However, beyond 40 hours overtime will be compensated at time and a half.

Overtime should be authorized in advance by the non-exempt employee's supervisor. The employee is responsible for documenting his or her overtime during applicable payroll periods using a monthly reporting form. The employee's supervisor should evidence his/her approval of this overtime by signing this form and, in turn, submitting it promptly to payroll staff in Finance for processing.

Supervisors will attempt to provide employees with reasonable notice when the need for overtime work arises. Please remember, however, that advance notice may not always be possible.

Employees will normally receive payment for overtime in the pay period following the period in which such overtime is worked, providing that the time record has been

properly prepared, approved by the supervisor, and forwarded to Finance for processing in a timely manner.

## PAYROLL PROCEDURES

Loomis Sayles pays employees on or about the 12th of each month as payment for the entire month. If you are leaving prior to the end of the month but have received a full month's pay, you will be required to reimburse the Firm for any excess payment made to you.

## RETIREMENT PLANS

To help you prepare for a financially secure retirement, the Company provides you with company-sponsored retirement plans.

The Firm has a pension plan which is funded solely by the Company and provides a core retirement benefit. For eligible employees vesting occurs after 5 years. Benefits are based on your years of service to the firm. The Pension Plan is not offered to employees hired on May 2, 2003 or later.

The Firm has a profit sharing and 401K plan which helps you make the most of your personal savings by providing you with tax deferrals and company contributions. The plan is offered to both existing and new employees. Your participation in the 401K plan is voluntary. You may contribute a percentage of your base salary on a pretax basis, up to the maximum allowed by the federal law. Your contribution is placed in your 401K Account in the Profit Sharing Plan. Your contributions are immediately vested.

The Company makes a contribution to the profit sharing plan on your behalf equal to a certain percentage of your base compensation. Such contributions are made into your profit sharing account. These company contributions become fully vested after your fifth anniversary with Loomis Sayles.

Copies of the summary plan descriptions for each of these plans are available from Human Resources or our Intranet Site.

The Firm expects all employees to notify their manager at least three months before their planned retirement date.

## QUALIFIED TRANSPORTATION EXPENSE (QTE) PLAN

If you participate in the QTE Plan, you can have money deducted on a pre-tax basis from your pay and use it for Qualified Transportation Expenses. The amount you choose to have deducted will be set aside to pay for your Qualified Transportation Expenses. By enrolling in the QTE Plan, you can pay for these expenses tax-free, meaning that you will

not have to pay state income taxes, federal income taxes or social security (FICA) taxes on these amounts.

### I.   Participating in the Plan

If you are a full time or regular part-time employee and want to use the Plan to pay for Qualified Transportation Expenses, you must enroll in the Plan by completing an enrollment form. You will use this form to indicate how much you want to designate for Qualified Transportation Expenses, up to the maximum amount allowable under the Plan.

### II.   Eligible Expenses

Qualified Mass Transit Expenses: You may claim expenses for transportation in a commuter highway vehicle (i.e., vanpool, bus) if such transportation is in connection with travel between your residence and place of employment. Mass transit passes (i.e., bus, train, subway) may also be reimbursed if a voucher or similar item (which may be exchanged only for a pass, token, farecard, etc.) is not readily available.

Qualified Parking Expenses: You may claim expenses for a parking space close to your employer's business place or for a parking space from which you commute by public transit, van or car pool. The parking space cannot be near your place of residence.

You change your elections or withdraw from the Plan anytime during the Plan Year. Note that the Firm may change or terminate the Plan at any time. In the event that the Firm amends or terminates this Plan, you will be notified about any changes which will affect your accounts.

## TUITION ASSISTANCE PROGRAM

### I.   Policy

Consistent with our desire to support employee professional development, Loomis Sayles provides eligible employees with 100% tuition reimbursement (up to $10,000 per year) for job-related courses. Tuition reimbursement is designed to support a part-time course of study, allowing employees to take courses while continuing to meet the requirements of their jobs. The primary focus of Loomis Sayles' Tuition Reimbursement policy is to provide employees with the opportunity to enhance competencies in their current positions.

II.   Eligibility

Regular, full-time employees who are in good standing are eligible for tuition reimbursement after one year of employment. Qualified courses are limited to those that the Company determines to be job-related. If Loomis Sayles concludes that a course is not job-related, tuition reimbursement will be denied. Courses not eligible for reimbursement should not be reimbursed through any other means.

Employees are required to achieve a certain grade level in order to receive 100% reimbursement. Employees are required to pay the Firm back certain amounts of the tuition payments if they leave the Firm within one year of the reimbursement. More details regarding eligibility and the procedure for applying for tuition assistance can be obtained from the Tuition Reimbursement policy on the Human Resources Intranet site.

If you wish to receive tuition reimbursement for courses you plan to take, please contact your supervisor.

## WORKERS' COMPENSATION

To provide for payment of your medical expenses and for partial salary continuation in the event of a work-related accident or illness, you are covered by workers' compensation insurance. The amount of benefits payable and the duration of payment depend on the nature of your injury or illness. If you are injured or become ill on the job, you must immediately report such injury or illness to your supervisor. This ensures that Loomis Sayles can assist you in obtaining appropriate medical treatment. Your failure to follow this procedure may result in the appropriate workers' compensation report not being filed in accordance with the law, which may consequently jeopardize your right to benefits in connection with the injury or illness.

Questions regarding workers' compensation should be directed to your office administrator or Human Resources in Boston.

## EMPLOYEE ASSISTANCE PROGRAM/WORKPLACE SOLUTIONS

Because our employees are Loomis Sayles' most valuable resource, staff well-being is one of our fundamental concerns. To provide help in balancing the demands of work and home life, Loomis Sayles maintains an Employee Assistance Program (EAP) that offers an array of services, at no charge, such as assistance with stress management, family relationships, individual conflicts, alcohol or drug-related difficulties, child/elder care, and parenting concerns. WorkPlace Solutions is our provider and we encourage you to make use of these services.

To make an appointment with a counselor, call 617-573-0810 or the convenient, toll-free 1-800-545-9343, Monday through Friday from 9:00 AM to 5:00 PM Eastern Time. For urgent situations a counselor can be reached 24 hours a day, seven days a week, at these same telephone numbers. The Firm's Human Resources Intranet site contains the log-in identification and password

information you will need to contact Workplace Solutions. For more information about WorkPlace Solutions, please visit their website at www.wpseap.org.

All EAP services are strictly confidential.

# V.   STAFF CONDUCT

## ABSENTEEISM & TARDINESS

Loomis Sayles expects all employees to assume diligent responsibility for their attendance and promptness. Recognizing, however, that illnesses and injuries may occur, Loomis Sayles has established sick leave, wage continuation, and long-term disability benefits plans to compensate full-time and regular part-time employees for certain time lost for legitimate medical reasons. Please consult the appropriate sections of this handbook for information regarding these benefits.

If you are unable to work because of illness, you should notify your supervisor or department head before the start of the business day on each day of your absence unless you are granted an authorized medical leave, in which case different notification procedures apply (see the family and medical leave policy described earlier in this handbook). Failure to properly notify Loomis Sayles results in an unexcused absence.

If you are absent for more than three consecutive workdays, a statement from your physician may be required before you will be permitted to return to work. In such instances, Loomis Sayles also reserves the right to require you to submit to an examination by a physician designated by the Firm at its discretion. In addition, Loomis Sayles may require you either to submit a statement from your physician or to be examined by a company-designated physician in other instances at its discretion, such as where abuse is suspected (e.g., where an employee's record indicates a pattern of short absences and/or frequent absences before or after holidays and weekends.)

Absenteeism or tardiness that is unexcused or excessive in the judgment of Loomis Sayles is grounds for disciplinary action, up to and including dismissal.

## CODE OF ETHICS

Loomis Sayles conducts its business in accordance with its Code of Ethics. The Code represents the legal and ethical standards which all staff are expected to uphold and our commitment to integrity. The Code covers issues such as personal trading, insider information, conflicts of interest and general compliance. Annually, all staff are required to sign an acknowledgment that they will adhere to the Code. For a copy, please contact the Legal and Compliance department or visit the Legal and Compliance department's site on our Intranet.

## CONFIDENTIALITY OF INFORMATION

The operations, activities, and affairs of the Firm and our clients, including but not limited to: (1) client lists and fees; (2) investment transactions and strategies; (3) marketing materials; and (4) finances and business plans are and shall be the trade secrets and confidential and proprietary information of the Firm and must be kept confidential to the greatest possible extent. If, during their employment, employees acquire confidential or proprietary information about Loomis Sayles and its clients, such information is to be handled in strict confidence and not to be discussed with outsiders. Employees are also responsible for the internal security of such information. This obligation survives the termination of employment with the Firm.

In addition, employees are prohibited from engaging in securities transactions on the basis of information not available to the general public and which, if known to outsiders, might affect their investment decisions. The dissemination of such information to others who might make use of that knowledge to trade in securities is also prohibited.

Employees found to be violating this policy are subject to disciplinary action, up to and including termination, and may also be subject to civil and/or criminal penalties for violations of, among other things, applicable securities laws.

## COMPUTER AND TELECOMMUNICATIONS USE

Computer and telecommunication systems such as PCs, laptops, electronic-mail (e-mail), internet, facsimiles, copiers, telephones and voicemail are the property of Loomis Sayles and are provided for use by Loomis Sayles staff to assist them in carrying out Loomis Sayles business.

Users of the company's electronic communications systems are expected to follow appropriate business communication standards. Sending, receiving, or downloading communications that are fraudulent, inappropriate, obscene, discriminatory, threatening or otherwise offensive is prohibited. Users must comply with all software licenses, copyrights, and all other state and federal laws governing intellectual property. Users may not illegally copy protected works or make copies of protected works available. Also, securities licensing requirements necessary for public communications apply to electronic communications. Recommendations or communications that require accompanying prospectuses may not be sent by e-mail.

Excessive or inappropriate personal use of the computer can lead to a loss in productivity and may cause delays in or failures of the Company's email, intranet and internet systems and is prohibited. Users may not install software/hardware onto their individual computers or the network without first receiving express authorization to do so from the Director of Information Technology, or his designee. In addition, to avoid downloading a computer virus, employees should not open attached documents from

unknown sources. Users who are uncertain about the source of the attachment should contact the Technology department before opening the file.

Since electronic communications made through the Company's systems are the property of the Firm, employees do not have a right of privacy over anything they create, send or receive through Loomis' electronic communication systems. The Firm reserves the right to monitor and audit electronic communications and documents for appropriate business usage, standards and compliance with this policy and applicable procedures.

Failure to comply with this policy may lead to disciplinary action up to and including termination of employment. This policy may be amended or revised periodically at the sole discretion of the company and no rights or privileges are hereby granted to users.

## PERSONAL APPEARANCE AND DEMEANOR

Discretion in style of dress and behavior is essential to the efficient operation of Loomis Sayles. Employees are, therefore, required to dress in appropriate attire and to behave in a professional, businesslike manner. The Company currently allows staff to dress in "business casual"; however, your attire should emphasize "business" not "casual". No denim, shorts, t-shirts or other excessively informal clothing will be permitted. Employees failing to adhere to proper Loomis Sayles standards with respect to appearance and demeanor, as determined by management in its discretion, are subject to disciplinary action. Please use good judgment in your choice of work clothes and remember to conduct yourself at all times in a way that best represents Loomis Sayles and you.

Employees are also required to keep their work environment clean and orderly. Before departing at the end of their workday, employees should lock all files and cabinets and clear all work materials of a sensitive or confidential nature from their desk surfaces.

## PROPRIETARY INFORMATION

Any material, documents, plans or programs an employee develops, either solely or with others, while employed at Loomis Sayles (the "Proprietary Material") is the sole property by Loomis Sayles. The Proprietary Material includes the work product from the employees of any and all departments at Loomis Sayles such as research, finance, portfolio management, sales and marketing and information technology. You may be required to assist Loomis Sayles in applying for and executing any application and/or assignments reasonably necessary to obtain any patent, copyright, trademark, or other statutory protection for the Proprietary Material. No employee will provide or disclose any Proprietary Material, or any portion therof, to any other organization or person, including former Loomis Sayles employees, or use the Proprietary Material in any other work not owned by Loomis Sayles. As Loomis Sayles is the owner of the Proprietary Material, this restriction on disclosure or use shall survive an employee's termination of employment.

## REFERENCES AND EMPLOYMENT INFORMATION

To the extent practicable and consistent with Loomis Sayles's own operating needs, information about a current or former employee, other than routine information, is not released to persons outside Loomis Sayles without the employee's written authorization. Unless the employee provides prior authorization, Loomis Sayles will generally only provide such routine information in response to outside inquiries such as the person's dates of employment, position status (full or part-time), and confirmation of salary. Requests for references or verification of employment should be forwarded to Human Resources.

This policy does not preclude the use of employee information by Loomis Sayles itself in connection with its own operating needs or the release of such information to government agencies and others in appropriate circumstances.

## SMOKING AND DRUG-FREE WORKPLACE

To maintain a safe and comfortable working environment and to ensure compliance with applicable laws, smoking in Loomis Sayles offices and facilities is strictly regulated. You should become familiar with the areas throughout Loomis Sayles premises where smoking is either permitted or prohibited. These areas have been marked clearly. Because the Firm may be subject to criminal and civil penalties for violations of applicable smoking laws, we must insist on strict adherence to this policy. Employees smoking in any nonsmoking area may be subject to disciplinary action. Please contact Human Resources if you have any questions about Loomis Sayles' smoking policy.

In addition, it is the policy of the Firm to create a drug-free workplace in keeping with the spirit and intent of the Drug-Free Workplace Act of 1988. The use of controlled substances is inconsistent with the behavior expected of employees, subjects all employees and visitors to our facilities to unacceptable safety risks, and undermines Loomis Sayles' ability to operate effectively and efficiently. In this connection, the unlawful manufacture, distribution, dispensation, possession, sale, or use of a controlled substance in the workplace or while engaged in Loomis Sayles business off the Firm's premises is strictly prohibited. Such conduct is also prohibited during nonworking time to the extent that in the opinion of Loomis Sayles, it impairs an employee's ability to perform on the job or threatens the reputation or integrity of the Firm.

## TRAVEL AND ENTERTAINMENT POLICY

It is Loomis Sayles' policy to reimburse its employees for all bona fide travel and entertainment expenses in accordance with Firm policies and procedures. These expenses should be reasonable and incurred in connection with the performance of assigned duties. They should be proper business expenses directly related to the conduct of Firm business.

The Firm's travel and entertainment policies and procedures have been written with full consideration of current IRS regulations.

The expense must be an ordinary and necessary business expense related to the conduct of the business.

Travel, meal and lodging expenses must be substantiated by documentary evidence (receipts or paid bills) indicating the amount, time or date, place or location and business purpose. Entertainment expenses must be further documented by disclosing the business relationship and name(s) of the individuals entertained.

The Firm's general policy is to refrain from gift giving to clients or other outside business contacts (without question **NEVER** to brokers or consultants). However, in special circumstances and with the appropriate approvals gifts may be given. The IRS limit for deductibility is $25.00/gift. However, the Firm may approve gifts, which exceed this amount. The maximum allowable gift per person per year is $100.00 and this amount includes holiday gifts. The name of the individual, a description of the gift and the business purpose must be disclosed to be considered for reimbursement. The cost of tickets to entertain clients or prospects at an event which does not include a Loomis employee is to be considered a gift.

Documentary evidence supporting travel and entertainment expenses must be provided with the employee's travel and expense report for all expenditures of $25 or more. For example, if entertainment involves separate charges for meals and entertainment, then the sum of these separate charges is used to determine the $25 threshold.

Employees of the Firm are expected to exercise care and good judgment when planning or incurring travel and entertainment expenses. One should be as careful in spending the Firm's funds as they are for their own personal travel and entertainment. Department Heads are responsible for reviewing and approving travel and entertainment expenses of the employees they manage. They must be careful to take this responsibility seriously. Please refer to the Finance Department's Intranet site for a more detailed description of the firm's T&E policy.

## CONCLUSION

We hope you found this Staff Handbook helpful. As mentioned previously, this handbook is intended to act as a summary of Company policies and is provided for informational purposes only. Since each employment situation is unique, the handbook policies must have some flexibility. As a result, the Firm may modify its policies where it determines, in its discretion, that the circumstances warrant it.

If you have any questions or comments on the policies in this handbook, please contact the Human Resources department.