UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
CONSIGLIA STACEY GROVE, )
)
Plaintiff, )
)
v. ) Civil Action No. 11-0310 (ABJ)
)
LOOMIS SAYLES & COMPANY, L.P., )
)
Defendant. )
)

# MEMORANDUM OPINION

Plaintiff Consiglia Stacey Grove brings this action against defendant Loomis Sayles & Co., L.P., ("Loomis") for breach of contract based on defendant's alleged failure to comply with a provision of its employee handbook. Am. Compl. ¶¶ 1–2.[1] Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court will grant defendant's motion to dismiss.

---

1  Plaintiff's amended complaint originally contained four counts: Counts I, II, and III alleged violations of the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401.01, *et seq.*, and Count IV alleged a claim for breach of contract. Plaintiff has conceded that the Court lacks subject matter jurisdiction over the DCHRA claims, Counts I–III, and has voluntarily dismissed them. Pl.'s Opp. at 3–4. Count IV is the only remaining count in this lawsuit.

I. **Background**

   a. Plaintiff's Employment at Loomis

Plaintiff, who was 36 years old when this lawsuit was filed, worked for defendant from October 1996 until her termination on May 1, 2009. Am. Compl. ¶ 11. Plaintiff worked in the Washington, D.C. office primarily as a marketing assistant in the sales department, and for a limited period of time, she provided administrative support to five individuals at the company. *Id.* ¶¶ 11–12.

Plaintiff alleges that on March 9, 2009, she was told that she and the three oldest employees in the sales department would be terminated because Loomis was closing its Washington D.C. office. *Id.* ¶ 25.[2] She states that after she had been informed of this news but before her last day of work, defendant Loomis "immediately sought to hire a person into what was effectively her former position." *Id.* ¶¶ 1; 34. Plaintiff alleges that the duties of the new position were the same as her former job, including having the same general job description and providing support services for several of the people whom plaintiff previously supported. *Id.* ¶ 32. The only material difference between the two positions was that the new one was located in Boston. *Id.* ¶ 33. Plaintiff contends that the geographic location of the person providing the support services has little relevance to the job. *Id.* Plaintiff believes that defendant offered the position to someone else before her last day. *Id.* ¶ 34.

   b. The Employee Handbook

Plaintiff contends that her employment at Loomis was governed by the 2009 Loomis Sayles Staff Handbook ("the Handbook"), which was in effect at the time of her termination. *Id.*

---

2   Plaintiff notes that Loomis never actually closed the Washington, D.C. office. Am. Compl. ¶ 27.

¶ 28. She claims that the Handbook constituted an express and implied-in-fact contract between herself and the defendant, which included, but was not limited to, the policies stated in the Handbook. Am. Compl. ¶ 65. But plaintiff does not claim that either her termination or the manner in which it occurred violated this alleged employment agreement. Rather, she premises her breach of contract claim on the allegation that defendant's failure to notify her of the new administrative vacancy in Boston violated a policy expressed in the Handbook.

In particular, plaintiff contends that defendant failed to adhere to the section of the Handbook entitled "Circulation of Job Openings":

> Loomis Sayles believes in promoting from within and has established a policy of circulating job openings to give all employees an opportunity to apply for positions in which they are both interested and qualified, as determined by management's reasonable discretion. The firm encourages [that] vacancies . . . be circulated via a memo distributed to the company apprising employees of specific job openings. Memos on job openings generally include the title, the minimum hiring specifications, the essential functions of the job and the closing date for filing applications. Employees normally have five workdays to respond to the memo.

Am. Compl. ¶ 29; Ex. A at 6. That section of the Handbook also provides that an employee must satisfy certain requirements to be eligible to apply for an open position: "you must have been in your current role for a minimum of one year. In addition, you must meet the minimum hiring specifications for the position, be capable of performing the essential functions of the job . . . and be an employee in good standing." *Id.* ¶ 30; Ex. A at 6. Even though she had been notified of her termination before the new position existed, plaintiff insists that she was eligible and qualified to apply for the position, and that defendant breached the agreement embodied in the Handbook by failing to afford her the opportunity to do so. *Id.* ¶¶ 43; 67–68.

Plaintiff filed this action on February 7, 2011. Defendant moved to dismiss for failure to state a claim upon which relief can be granted [Dkt. #10].

## II. Standard of Review

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).3 In *Iqbal,* the Supreme Court reiterated the two principles underlying the *Twombly* decision: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. Proc. 8(a)(2)). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*. at 1949, (quoting *Twombly*, 550 U.S. at 570), and "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint "is construed liberally in [plaintiff's] favor, and [the Court should] grant [plaintiff] the benefit of all inferences

---

3    Plaintiff's opposition references the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). That standard was expressly modified by the Supreme Court in *Twombly*. 550 U.S. at 570.

4

that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted); *see also EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In this case, the Court may properly consider the Handbook as it was incorporated by reference in the complaint and attached as an exhibit to the first amended complaint.

### III.  Analysis

In the District of Columbia, all employment is at-will "unless a contrary contractual intent is clearly expressed[.]" *Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 410 (D.D.C. 2008), citing *Green v. Bowne of N.Y., LLC*, 2002 U.S. Dist. LEXIS, at *1–2 (D.D.C. Sept. 5, 2002) (internal citations omitted). Even if the employer has provided its employees with an employee handbook, the handbook is not enforceable as an employment contract if it disclaims the establishment of contractual obligations and explicitly provides that employment may be terminated at-will. *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 806 (D.C. 2003) (holding that employee guidebook did not create an implied employment contract as it contained a clearly-stated boldfaced disclaimer and statement that employment was at-will); *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 505 (D.C. 2002) (holding that language in employee handbook stating that "it was 'not to be considered as creating terms and conditions of an employment

contract' and that the employment relationship was 'employment at-will'" "was sufficiently explicit to preclude the creation of implied contractual obligations as a matter of law"); *see also U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 747 (D.C. Cir. 1998) (finding that whether a handbook without a disclaimer or at-will statement constituted a contract was a question for the jury).[4]

In this case, the 2009 Loomis Sales Staff Handbook states in direct terms both that "[t]his handbook is not a contract, express or implied, guaranteeing employment for any specific duration" and that "your employment with Loomis Sayles is 'at-will.'" Am. Compl., Ex. A. at 4. It also provides that "all employment relationships with Loomis Sayles are on an at-will basis." *Id.* at 8. The handbook also indirectly disclaims liability by stating: "[t]his handbook is intended to act as a summary of the Company's policy and is provided for informational purposes only," and "the Firm may modify its policies where it determines, in its discretion, that the circumstances warrant it." *Id.* at 4.

Plaintiff fully acknowledges the at-will nature of her employment relationship with the defendant. She argues that since she is not relying on the Handbook to claim that she had a contractual right to continued employment, but she is seeking to enforce a provision in the Handbook unrelated to job tenure, the Handbook's disclaimer is irrelevant. Pl.'s Opp. at 10. But the Court cannot overlook the fact that the gravamen of the complaint is that the Handbook gave

---

4  As an initial matter, the parties dispute the issue of whether the employee handbook constitutes a contract is a question of law for the Court to resolve or a question of fact to be given to a jury. Pl.'s Opp. at 4; Def.'s Reply at 13. While "contractual rights may arise from the language in employee manuals [,] . . . employers can effectively disclaim any implied contractual obligation arising from such provisions." *Strass v. Kaiser Found. Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1011 (D.C. 2000); *see also Smith v. Union Labor Life Ins.*, 620 A.2d 265, 269 (D.C. 1993) (citations omitted). The legal effect of such a disclaimer is a question of law for the Court to decide. *Smith*, 620 A.2d at 269.

rise to a contract setting forth certain terms and conditions of employment, that plaintiff is asking the Court to enforce it, and that the law in the District makes it clear that an employee handbook containing disclaimers is not a contract. Plaintiff fails to point to any case law that supports her argument that express disclaimers of contractual intent do not apply if plaintiff's breach of claim concerns some aspect of employment other than at-will employment status.

Plaintiff next argues that the disclaimer was ineffective because it was inconsistent with other language in the Handbook. She claims that the presence of mandatory language such as "will" and "shall" in the provision she seeks to enforce is inconsistent with the legal disclaimer because it "creates obligations on both Defendant and Plaintiff [] and even outlined consequences for failing to meet said obligations." Pl.'s Opp. at 2. While it is true that in some instances, handbook language that is "rationally at odds" with a disclaimer can render a disclaimer ineffective, *see Strass*, 744 A.2d 1000, 1013–14 (D.C. 2000), plaintiff cannot make such a showing here.

Plaintiff claims that the job circulation provision in the Handbook constitutes a mandatory commitment by defendant to adhere to a certain policy, but her theory is undermined by a reading of the provision in question. The applicable section states: "[Defendant] has established a policy of circulating job openings to give all employees an opportunity to apply for positions in which they are both interested and qualified as determined in the *management's reasonable discretion*. The firm encourages vacancies below the senior management level be circulated via a memo . . ." Ex. A at 6 (emphasis added). This exhortation falls well short of establishing a mandatory duty.

Plaintiff suggests that the use of the word "must" in the job circulation policy is relevant:

> To be eligible to apply for an open position, you *must* have been in your current role for a minimum of one year. In addition, you *must* meet the minimum hiring specifications for the position . . . you *must* notify your supervisor or Human Resources. This *will* allow you the opportunity to review your skills and experience against those required of the open position.

*Id.* (emphasis added). But these sentences impose requirements on the employees applying for vacancies, not on the employer.

Thus, the Court is not persuaded that the portions of the Handbook relied upon by the plaintiff render the legal disclaimer ineffective. The policy of circulating job openings is expressly made subject to "management's reasonable discretion," Ex. A at 6, and the word "encourages" is permissive, not mandatory language. The D.C. Court of Appeals has found that the use of such permissive language in a personnel manual is, as a matter of law, insufficient to create contractual rights. *Perkins v. Dist. Gov't Employees Fed. Credit Union*, 653 A.2d 842, 843 (D.C. 1995) (determining that language stating that employer "in [its] discretion . . . may" take certain actions was insufficient to conclude that the parties intended to create a contract). The cited provisions cannot be considered to be "rationally at odds" with the Handbook's disclaimer of contractual intent.[5] *See Hopkins v. Blue Cross and Blue Shield Association*, No. 10-900, 2010 WL 5300536, at 4 (D.D.C. 2010) (holding that compensation and performance guidelines were not "rationally at odds" with handbook's disclaimer language).

---

5    Plaintiff also argues that the use of mandatory language throughout "the entirety of the Handbook" created a contract between the parties because there is a "clear indication that this employment manual was intended by Defendant to govern the rights and responsibilities of both parties." Pl.'s Opp. at 8, citing Ex. A at 5 (affirmative action policy) ("The Company will utilize training programs and assist minority employees . . ."), 7 (equal employment policy) ("The Company . . . will take appropriate corrective action . . ."). But there is no allegation that a provision containing binding language was violated in this case, and if anything, the fact that the Handbook utilized mandatory language in some instances but not others underscores the discretionary nature of the particular policy plaintiff is seeking to enforce here. The legal effect of any other provision is not before the Court on this motion.

Therefore, under District of Columbia law, the Handbook did not give rise to any enforceable contract rights, and plaintiff's breach of contract claim fails.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion to dismiss, and this case will be dismissed with prejudice. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: September 13, 2011